FILED ___ ENTERED
LOGGED ___ RECEIVED
DEC 8 2017
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THEODORE WILLIAM WULFFERS, *

Plaintiff *

v. * Civil Action No. PWG-17-3269

WARDEN RICHARD GRAHAM, JR., *et al.*, *

Defendants *

\*\*\*

## MEMORANDUM OPINION

In this civil rights action, Plaintiff Theodore Wulffers alleges that prison officials have failed to act after being informed that Plaintiff has been subject to assaults and threats by gang-affiliated inmates. ECF No. 1. He titled his Complaint as a "Request for temporary restraining order/And or Injunctive relief/And or Declaratory relief/Appropriate relief under 42 U.S.C. § 1983," *id.* at 1, and among other things, Plaintiff seeks to be immediately placed on administrative segregation for his safety and to be transferred from his current correctional facility, *id.* at 13. On December 1, 2017, Plaintiff filed a Motion for Protective Order. ECF No. 5. For the reasons that follow, the Court grants the Motion to the extent that Plaintiff seeks a temporary restraining order requiring the prison to house him in protective custody or administrative segregation, until such time as the matter of Plaintiff's requested injunctive relief can be fully briefed and resolved or upon the expiration of 14 days, whichever is earlier.

## BACKGROUND

In 2012, Plaintiff informed correctional officers at Maryland Correctional Institution—Hagerstown ("MCI-H") that he faced threats from members of a particular Security Threat Group ("STG"). Compl. 5. Plaintiff was placed in administrative segregation for his protection before being transferred to a different institution for his "safety and welfare." *Id.* at 5-6. In

2015, Plaintiff was sent back to MCI-H, even though he had informed correctional officers of the safety risk of being placed near members of the STG. *Id.* at 6. In 2016, members of the STG assaulted Plaintiff, resulting in serious injuries and treatment at a hospital. *Id.* at 6-7.

At some point, Plaintiff was transferred to Western Correctional Institution ("WCI"). In October 2017, Plaintiff told WCI correctional officers that his

> life was in danger, that if he stayed on compound or prison he would be stabbed or worse, . . . [and that the STG members] in building 3 and compound found out who [he] was and told [him] that [he] had to pay $100 a month to stay on compound or else they would fly me out in a body bag[.] [P]laintiff explained in detail his history and that [the STG members] had a hit on him and hit him once already. [P]laintiff asked to be placed on admin[istrative segregation] for safety and welfare[.]

*Id.* at 9. The officers refused to take action and told Plaintiff to return to his housing assignment (which was presumably in Building 3, where Plaintiff faced the STG threat). *Id.* Plaintiff refused and was given a disciplinary "ticket" for refusing housing and disobeying a direct order. *Id.* Following his October 16, 2017 hearing on the disciplinary ticket, Plaintiff was sentenced to 15 days of "lockup." *Id.* at 10.

On October 23, 2017, prior to the expiration of his 15-day sentence, Plaintiff was told that he would be released from lockup and returned to Building 3. *Id.* He again expressed concerns for his safety, asked to be placed in administrative segregation, and was given a disciplinary ticket for refusing housing. *Id.* Following a hearing, Plaintiff was sentenced to 45 days of lockup for this violation. *Id.* at 11.

Plaintiff filed this civil rights action on November 3, 2017. *Id.* Among other claims, Plaintiff alleges that correctional officers are deliberately indifferent to his safety, and he seeks permanent injunctive relief in the form of a placement in administrative segregation and a prison transfer. *Id.* at 13-14. On December 6, 2017, the Court ordered Defendants to show cause why

2

Plaintiff's requested injunctive relief should not be granted. ECF No. 6.

On December 1, 2017, Plaintiff filed a Motion for Protective Order. ECF No. 5. The Motion is broadly framed and includes some generic assertions that correctional officers have history of retaliating against inmates who file complaints, without alleging any specific retaliatory acts that Plaintiff has been subject to after filing this action. *See, e.g., id.* at 1-2. In this Motion he seeks protection from the vague possibility of retaliation by the correctional officers, unlike in his Complaint in which he seeks immediate protection from other inmates for specific reasons.

While the Motion does not meet the requirements for immediate injunctive relief, in the cover letter that accompanied it, ECF No. 3, Plaintiff stresses the urgency of his requests for injunctive relief in his Complaint. Indeed, by my calculations, Plaintiff could be returned to the general population as soon as this Sunday, December 10, 2017. Therefore, I will construe the Complaint to incorporate a motion for a TRO and order temporary injunctive relief while Plaintiff's request for preliminary injunctive relief is briefed and resolved.

## DISCUSSION

### a. TRO/Preliminary injunction requirements generally

The purpose of a TRO or a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). A preliminary injunction is distinguished from a TRO only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). A preliminary injunction cannot issue without

3

notice to the nonmovant. *See* Fed. R. Civ. P. 65(a)(1). As the show cause order was only recently issued and Defendants have not been given a meaningful chance to respond to Plaintiff's requests for injunctive relief, Plaintiff is only eligible for a TRO at the present juncture.

"To obtain a TRO, the plaintiff must "establish that [1] he is likely to succeed on the merits, [2] he is likely to suffer irreparable harm in the absence of preliminary relief, [3] the balance of equities tips in his favor, and [4] an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The plaintiff must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). As a TRO is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The Court concludes that Plaintiff has satisfied these requirements with regard to his request for a TRO to have him placed on administrative segregation or in protective custody.[1] First, Plaintiff alleges that he has notified prison officials on multiple occasions of the ongoing threat that he faces from the STG members, yet they have refused to act or refer his complaints to supervisory officers. Compl. 13. Based on the materials presently before the Court, Plaintiff has a meritorious claim of deliberate indifference to his safety. Second, Plaintiff's allegations also suggest that he is likely to suffer irreparable harm if no action is taken to protect him from the STG members. He has already been seriously injured at least once, and he reports that the STG members have placed a "hit" on him, suggesting that he faces the risk of death or serious injury from a number of other prisoners.

Further, the balance of equities weighs in Plaintiff's favor. The potential harm to

---

[1] With regard to his Motion for Protective Order, however, he has not shown that he is likely to suffer irreparable harm, as he has not articulated any specific threats or retaliatory action taken since he filed his Complaint.

4

Plaintiff is serious and unavoidable by Plaintiff acting on his own.[2] Although the Court acknowledges that prison management issues like housing placement are ordinarily best left to prison officials rather than the Court, a TRO concerning the protective placement of a single inmate does not pose a significant burden on the Defendants or their prison management power. Any such burden is slight when compared with the threat of death or serious injury that Plaintiff faces if prison officials fail to act. Finally, although some might argue that the public interest in a single inmate's safety is slight, a TRO is in the public interest, as it suggests that prisoners who alert authorities to safety risks will be protected. There certainly is a public interest in ensuring that prisoners are not knowingly subjected to mortal danger.

**b. Requirements under Fed. R. Civ. P. 65**

Federal Rule of Civil Procedure 65(b), concerning TROs, states:

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

Although the Court issued a show cause order on December 6, 2017, ECF No. 6, with a

---

[2] Arguably, Plaintiff can avoid the harm by refusing housing or otherwise violating prison rules, resulting in disciplinary violations and placement in "lockup," as he has done over the past few months. However, it would be fundamentally unfair to require that Plaintiff accrue disciplinary violations—which, as Plaintiff notes, Pl.'s Mot. 2, could detrimentally impact his release date—and suffer curtailed privileges to keep himself safe simply because prison officials refuse to act.

5

response due December 15, 2017, the Court is not satisfied that this is sufficient to constitute notice that places Plaintiff's request beyond Rule 65(b)'s requirements. *See U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 283 (4th Cir. 2006) ("The notice requirement thus is more substantive than technical, requiring that a defendant be given 'a fair opportunity to oppose the application,' as distinct from a specified number of hours or days.").

As to Fed. R. Civ. P. 65(b)(1)(A), the Court notes that Plaintiff has not filed an affidavit or verified complaint. However, Plaintiff is proceeding *pro se*[3] and could be returned to the general population before the Court is able to alert him to this requirement and receive his response. Accordingly, the Court will impose the TRO subject to Plaintiff filing, immediately upon receipt of this memorandum opinion and order, an affidavit affirming the veracity of the facts contained in the Complaint. Regarding Fed. R. Civ. P. 65(b)(1)(B), Plaintiff does not have an attorney, and this Court does not require prisoners to serve filings on opposing parties. I also note that Defense counsel has entered her appearance, ECF No. 7, and thus has notice of Plaintiff's Complaint, which appears on the docket.

Turning to Fed. R. Civ. P. 65(b)(2), the Court incorporates its discussion from the preceding section about Plaintiff's risk of death or serious injury at the hands of the STG members if Plaintiff is returned to general population. Such injuries are obviously irreparable, as the Court cannot fashion an adequate remedy to cure the harm resulting from such injuries. This Memorandum Opinion and accompanying Order are being issued without meaningful notice and time to respond because of Plaintiff's impending release from disciplinary segregation and return to general population. Based on the information presently available to this Court, said release is likely to occur on or around December 10, 2017, which does not allow for sufficient time for full briefing and consideration of the issue. The Order shall expire following the earlier of 14 days or

---

[3] His Motion to Appoint Counsel, ECF No. 4, remains pending.

full briefing and resolution on a preliminary injunction to the same effect.

Accordingly, the Court shall grant Plaintiff's request for a TRO to the extent that he seeks a TRO placing him in protective custody or administrative segregation. A separate order follows.

12/8/2017
Date

Paul W. Grimm
United States District Judge